**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAMESHAY PRUDE, as administrator of the estate of DANIEL PRUDE, deceased,<br><br>                                                  Plaintiffs,<br><br>-against-<br><br>THE CITY OF ROCHESTER, a municipal entity, LA'RON SINGLETARY, MARK L. SIMMONS, HENRY C. FAVOR, MICHAEL PERKOWSKI, MARK VAUGHN, TROY TALADAY, FRANCISCO SANTIAGO, MICHAEL MAGRI, ANDREW SPECKSGOOR, PAUL RICOTTA JOSIAH HARRIS, FLAMUR ZENELOVIC, MICHAEL HOULIHAN, RANDY BENJAMIN,<br><br>                                                  Defendants. | **CASE NO.: 20-cv-6675 (FPG)** |

## DECLARATION OF ELLIOT DOLBY SHIELDS, ESQ.

**Elliot Dolby Shields, Esq.**, an attorney duly admitted to practice law in the State of New York and the Western District of New York, declares pursuant to 28 U.S.C. § 1746, under the penalty of perjury, that the following is true and correct:

1. I am associated with Roth & Roth LLP, and I am co-counsel, along with Donald Thompson of Easton Thompson Kasperek Shiffrin LLP, for the Plaintiff, TAMESHAY PRUDE, as administrator of the estate of DANIEL PRUDE, deceased.

2. On March 23, 2020, Daniel Prude had an interaction with Rochester Police Department Officers where Mark Vaughn, Troy Taladay and Francisco Santiago used force against Daniel Prude as Josiah Harris, Mark Magri, Andrew Specksgoor and Paul Ricotta stood idly nearby and failed to intervene to save Mr. Prude's life.

3. As a result of the force used, Mr. Prude's brain was deprived of oxygen for approximately 20 minutes, and he was "brain dead." Mr. Prude died on March 30, 2020 when his brother, Joe Prude, removed him from life support.

4. Immediately following the incident on March 23, 2020, Joe Prude contacted Don Thompson and my office to inform us that he believed the RPD killed his brother.

5. On April 3, 2020, I served a preservation letter and a Freedom of Information Law request with the City of Rochester for all records related to the March 23, 2020 incident between RPD Officers and Mr. Prude. True and correct copies of the Preservation Letter and FOIL request are annexed hereto as **Exhibits "A" and "B"** respectively.

6. The City provided an automated response acknowledging the request that same day. That response stated, "The City will supply either the requested material or an updated response within approximately 20 business days. We will notify you in writing should additional time be needed." The City failed to supply the requested materials or communicate with your undersigned within 20 business days.

7. Thus, on May 28, 2020, I filed an appeal of the constructive denial of the request. A true and correct copy of the FOIL appeal is annexed hereto as **Exhibits "C".**

8. On June 9, 2020, a City attorney, Stephanie Prince, called me and asked me to agree to extend the City's deadline to release the body worn camera recordings of the incident. I told Stephanie Prince that we could not agree to do that, and that the City could not lawfully withhold the video.

9. On June 11, 2020, the City sent me an email response to the May 28, 2020 FOIL appeal. For the first time in that response, the City falsely claimed that HIPAA applied because the video depicted Mr. Prude naked and receiving medical attention. A true and correct copy of the City's response to my FOIL appeal is annexed hereto as **Exhibits "D".**

10.     I immediately informed the City that HIPAA did not apply and they needed to supply the video immediately, but they refused. Eventually, on or about July 21, 2020, I provided the City with a HIPAA authorization, even though it was not legally required.

11.     On July 21, 2020, I arranged a meeting with Assistant Attorney General Jennifer Sommers at her office so that Tameshay Prude, Joe Prude and Joe Louis Cole—Daniel's sister, brother and father—could watch the body worn camera videos of the incident.

12.     After viewing the horrific videos of the RPD officers killing Daniel Prude, while mocking him and making jokes at his expense, it was clear to Tameshay Prude that the video needed to be released publicly as soon as possible.

13.     I immediately followed up with the City attorney on July 23, 2020 via email and told her that I had seen the video, and that the City needed to provide it to me immediately. A true and correct copy of the email is annexed hereto as **Exhibits "E".**

14.     Meanwhile, on July 27, 2020, we served a Notice of Claim on the City of Rochester on behalf of Tameshay Prude, as proposed administrator of the Estate of Daniel Prude. A true and correct copy of the NOC is annexed hereto as **Exhibit "F"**.

15.     On August 4, 2020, we filed a Petition for Letters of Administration in the Monroe County Surrogates Court, with Tameshay Prude as the proposed administrator of the Estate. A true and correct copy of the Petition is annexed hereto as **Exhibit "G"**.

16.     On August 24, 2020, the Court issued Letters of Administration with Limitations to Tameshay Prude, which empower her to pursue lawsuits arising from Daniel Prude's wrongful death. A true and correct copy of the Limited Letters of Administration is annexed hereto as **Exhibit "H"**.

17. Meanwhile, on August 20, 2020, my office finally received a copy of the body worn camera recordings of the seven RPD officers at the scene of Daniel Prude's death from the City of Rochester. We immediately hired a videographer to edit the seven body worn camera videos, to make one seamless video that could be released publicly.

18. On September 1, 2020, we served an Amended Notice of Claim on the City of Rochester. A true and correct copy of the Amended NOC is annexed hereto as **Exhibit "I"**.

19. On September 2, 2020, Tameshay Prude, as administrator of her brother's estate, through her counsel and her brother Joe Prude, publicly released the video of her brother Daniel being killed by RPD officers.

20. On September 3, 2020, we learned that Tashyra Prude and Junera Prude were publicly claiming that they were Daniel Prude's children.

21. On September 4, 2020, to ensure that the interests of any putative children of Daniel Prude were protected, including Tashyra and Junera, we filed a Second Amended Notice of Claim with the City of Rochester which added claims for loss of guidance and support. A true and correct copy of the Second Amended NOC is annexed hereto as **Exhibit "J"**.

22. Unbeknownst to Plaintiff or your undersigned, on September 4, 2020, Tashyra and Junera filed a Petition for letters of administration in the Monroe County Surrogate's Court. That petition was rejected by the Court. ECF No. 3-4, Exhibit "D" to motion of proposed intervenors.

23. On September 8, 2020, Plaintiff filed the instant lawsuit. ECF No. 1. One of the goals of this lawsuit is to bring about systemic reforms within the Rochester Police Department and to ensure that no other family experiences the pain of a loved one being unnecessarily killed by RPD officers. The Complaint alleges that Mr. Prude's death was caused by the unlawful

policies, practices and customs of the City and RPD, which condone officers' use of excessive force by their constitutionally deficient supervision and discipline systems. *Id*. at ¶¶ 124–296.

24.     Thereafter, on September 11, 2020, Tashyra and Junera filed an Order to Show Cause and Petition to Revoke the Letters of Administration issued to Tameshay Prude. To date, the Order to Show Cause has not been signed by the Court. ECF No. 3-5, Exhibit "E" to motion of proposed intervenors.

25.     On September 16, 2020, another putative child of Daniel Prude, Nathaniel McFarland, filed a Petition to Revoke the letters of administration and for Temporary Ancillary Letters of Administration in the Monroe County Surrogate's Court. Notably, in that application, Mr. McFarland states that, "Temporary Ancillary Letters are required to permit intervention in [this] lawsuit to allow it to be voluntarily discontinued." A true and correct copy of Nathaniel McFarland's Petition is annexed hereto as **Exhibit "K"**.

26.     That same day, September 16, 2020, Tashyra and Junera filed a motion in this case pursuant to Rule 24(a)(2) and (b) of the Federal Rule of Civil Procedure seeking to intervene in this case. ECF No. 3.

27.     If this motion is granted, proposed intervenors could move to dismiss this case, as Nathaniel McFarland stated was his goal.

28.     Dismissing this case would not be in the best interests of the Estate, the putative children or the distributees and potential distributees of the Estate.

Dated:      New York, New York
            September 22, 2020

                                        Respectfully submitted,


                                        ____~//s//~_____
                                        ELLIOT D. SHIELDS