UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATHANIEL MCFARLAND, in his capacity as
supervised and ancillary administrator of the ESTATE
OF DANIEL PRUDE,

                                 Plaintiff,

    vs.

THE CITY OF ROCHESTER, MARK VAUGHN,
TROY TALADAY, FRANCISCO SANTIAGO,
MICHAEL MAGRI, ANDREW SPECKSGOOR,
JOSIAH HARRIS, and other as-yet-unidentified
Rochester police officers.

                                Defendants.

ANSWER TO THE
AMENDED COMPLAINT
FOR THE CITY OF
ROCHESTER

Case 6:20-cv-6675 (FPG)

Jury Trial Demanded

       Defendant City of Rochester, by its attorney Timothy R. Curtin, Esq., Corporation

Counsel, Patrick Beath, Esq., of counsel, answers the Amended Complaint as follows:

       1.      Admits the allegations contained in paragraphs 3, 4, 6, 7, 8, 9, 10, 11, 12, 20, 25,

77, 78, 80 and 91 of the Amended Complaint.

       2.      Denies the allegations contained in paragraphs 1, 31, 32, 35, 39, 40, 41, 42, 43,

44, 45, 46, 47, 48, 49, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 69, 70, 73, 74, 75,

76, 84, 85, 86, 87, 90, 93, 94, 95, 96, 97, 99, 100, 101, 102, 104, 105, 106, 107, 108, 110, 111,

112, 113, 114, 116, 117, 118, 119, 120, 122, 123, 124 and 125 of the Amended Complaint.

       3.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraphs 5, 13, 14, 18, 50, 51 and 72 of the Amended Complaint.

       4.      Denies the allegations contained in paragraph 2, 92, 98, 103, 109, 115, 121 and

126 of the Amended Complaint, except admits that plaintiff purports to proceed as stated therein.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Amended Complaint, except admits that, on March 22, 2020, Joe Prude's wife called 911 and requested a police officer and an ambulance for a mental hygiene arrest of Daniel Prude, whom she described as hallucinating and "going crazy." She also reported that Daniel Prude had consumed "leaf," which she described both as a cigarette dipped in embalming fluid and as a form of PCP.

6.      Denies the allegations contained in paragraph 16 of the Amended Complaint, except admits that police responded to the home of Joe Prude on the evening of March 22, 2020 where they found Daniel Prude in the kitchen with Joe Prude making various statements, including "Jesus Christ I pray, Amen," "I been wanting to die," and "please kill me."

7.      Denies the allegations contained in paragraph 17 of the Amended Complaint, except admits that Daniel did not physically resist being placed in handcuffs or being escorted to the waiting ambulance.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Amended Complaint, except admits that Joe Prude called 911 and reported that his brother, who had previously been admitted and released from Strong Memorial Hospital, ran out of his house.  Joe Prude expressed concern that Daniel might go to the nearby train tracks and be struck by a train.

9.      Denies the allegations contained in paragraph 21 of the Amended Complaint, except admits that Joe Prude informed Officer Specksgoor that, earlier that day, Daniel Prude was hallucinating due to PCP use, had threatened to kill himself, and was taken to Strong Memorial Hospital, but that since returning from the hospital, Daniel had not appeared to be intoxicated and had not threatened to hurt himself before suddenly running out of the house.

2

10.     Denies the allegations set forth in paragraph 22 of the Amended Complaint, except admits that Daniel Prude was experiencing acute PCP intoxication at the time that a tow-truck driver called 911 to report encountering Mr. Prude near the intersection of West Main Street and Jefferson Avenue.  The tow-truck driver described that Mr. Prude had barely any clothes on, was covered in blood, and appeared to be attempting to break into a car.  The tow-truck driver also reported that Mr. Prude stated that he had coronavirus.

11.     Denies the allegations set forth in paragraph 23 of the Amended Complaint, except admits that a number of police officers responded to the call concerning Daniel Prude, and that Officer Mark Vaughn stopped Mr. Prude in the vicinity of 435 Jefferson Avenue.

12.     Denies the allegations set forth in paragraph 24 of the Amended Complaint, except admits that Officer Vaughn pointed a taser at Daniel Prude while repeatedly instructing Mr. Prude to "get on the ground."  Mr. Prude complied and lay on the ground after being directed to do so at least six times.

13.     Denies the allegations set forth in paragraph 26 of the Amended Complaint, except admits that at the time he handcuffed Daniel Prude, Officer Vaughn had information that Mr. Prude was acutely intoxicated on PCP, that he may have committed a crime by breaking a window at a nearby store, and that he may be infected with the coronavirus.

14.     Denies the allegations set forth in paragraph 27 of the Amended Complaint, except admits that Sgt. Magri and Officers Taladay, Santiago, Harris and Specksgoor arrived at the scene of Daniel Prude's detention and assisted in securing the scene while awaiting the arrival of Emergency Medical Services.

15.     Denies the allegations set forth in paragraph 28 of the Amended Complaint, except admits that Officer Specksgoor, upon arriving at the scene, confirmed that the individual

in custody was Daniel Prude, who he had reason to believe was acutely intoxicated with PCP based upon his earlier conversation with Joe Prude.

16.     Denies the allegations set forth in paragraph 29 of the Amended Complaint, except admits that, following his handcuffing of Daniel Prude, Officer Vaughn remarked "that was easy and fast."

17.     Denies the allegations set forth in paragraph 30 of the Amended Complaint, except admits that an ambulance and Emergency Medical Technicians were staging nearby awaiting the police to let them know that it was safe to come to the scene.

18.     Denies the allegations set forth in paragraph 33 of the Amended Complaint, except admits that Daniel Prude turned onto his back and sat up in apparent refusal to comply with police orders to stay down.

19.     Denies the allegations set forth in paragraph 34 of the Amended Complaint, except admits that police placed a spit sock over Daniel Prude's head after Mr. Prude, who had previously reported that he was infected with coronavirus, began to spit.

20.     Denies the allegations set forth in paragraph 36 of the Amended Complaint, except admits that Daniel Prude initially moved from a prone to a sitting position, then began to rock as if to stand up, while simultaneously and repeatedly yelling "gimme that gun."  After Mr. Prude refused to obey commands to stay on the ground, police officers physically restrained Mr. Prude on the ground.

21.     Denies the allegations set forth in paragraph 37 of the Amended Complaint, except admits that Officer Vaughn used a trained segmenting technique to hold Mr. Prude's head to the ground in order to stop Mr. Prude's attempts to stand up.

22.     Denies the allegations set forth in paragraph 38 of the Amended Complaint, except admits that Officers Taladay and Santiago used trained ground stabilization techniques, applying reasonable force to keep Mr. Prude on the ground and to stop him from further attempting to stand up.

23.     Denies the allegations set forth in paragraph 64 of the Amended Complaint, except admits that Officers Vaughn, Taladay and Santiago completed Subject Resistance Reports concerning their restraint of Daniel Prude.

24.     Denies the allegations set forth in paragraph 68 of the Amended Complaint, except admits that Daniel Prude was suspected of committing the crimes of burglary and criminal mischief based upon his breaking the window of a Metro PCS store and entering the store through the broken window.

25.     Denies the allegations set forth in paragraph 79 of the Amended Complaint, except admits that police officers are empowered to effect a mental hygiene detention pursuant to the mental hygiene law in specific circumstances.

26.     Denies the allegations set forth in paragraph 81 of the Amended Complaint, except admits that proper policies and training are necessary to ensure that police officers properly carry out their obligations under the mental hygiene law.

27.     Denies the allegations set forth in paragraphs 82 and 83 of the Amended Complaint, except admits that the RPD was aware that its officers would be required to make mental hygiene detentions under the mental hygiene law and, therefore, the RPD implemented appropriate policies and training.

28.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 88 of the Amended Complaint, except admits that there were

5

protests in the City of Rochester following the September 2020 release of footage of Mr. Prude's detention.

29.     Denies the allegations set forth in paragraph 89 of the Amended Complaint, except admits that La'Ron Singletary was terminated from his position as Police Chief in September of 2020.

## FIRST AFFIRMATIVE DEFENSE

30.     The Amended Complaint fails to state a claim for relief.

## SECOND AFFIRMATIVE DEFENSE

31.     Any use of force by Rochester Police Officers, including the named defendant officers, against plaintiff's decedent was objectively reasonable and justified under New York State and Federal Law.

## THIRD AFFIRMATIVE DEFENSE

32.     The acts or omissions of any Rochester Police Officers, including the named defendant officers, were not the proximate cause of any of the injuries about which plaintiff complains.

## FOURTH AFFIRMATIVE DEFENSE

33.     The injuries and damages alleged in the Complaint were caused by the Plaintiff's decedent's own acts, or omissions to act, which were negligent, reckless, wrongful, intentional or otherwise culpable; should any damages ultimately be awarded in this matter, they shall be diminished in proportion to plaintiff's decedent's culpable conduct.

## FIFTH AFFIRMATIVE DEFENSE

34.     Neither defendant City nor any individual Rochester Police Officer owed plaintiff's decedent any special duty, nor did they breach any such special duty.

6

## SIXTH AFFIRMATIVE DEFENSE

35.     The Rochester Police Officers involved in the detention of plaintiff's decedent properly exercised their professional judgment and defendant City is therefore entitled to good faith immunity and discretionary immunity from suit.

## SEVENTH AFFIRMATIVE DEFENSE

36.     Damages for loss of enjoyment of life or so-called hedonic damages are not available to plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

37.     Plaintiff's available wrongful death damages are limited to those set forth in the New York Estates, Powers, and Trusts Law.


**WHEREFORE**, defendants City demands judgment dismissing plaintiff's Amended Complaint, together with the costs and disbursements of this action and such other and further relief as may be just and proper.


DATED: March 29, 2021                         TIMOTHY R. CURTIN
                                              CORPORATION COUNSEL


                                      _____/S/Patrick Beath_____
                                  BY:  PATRICK BEATH, ESQ, of Counsel
                                       *Attorneys for Defendants*
                                       Rochester City Hall
                                       30 Church Street, Room 400A
                                       Rochester, New York 14614
                                       (585) 428-6812


TO:    FARACI LANGE, LLP
       Stephen G. Schwarz, Esq.
       Lesley E. Niebel, Esq.
       28 East Main Street, Suite 1100
       Rochester, New York 14614
       585-325-5150

sschwarz@faraci.com
lniebel@faraci.com

HUGHES SOCOL PIERS RESNICK & DYM, Ltd.
Matthew J. Piers, Esq.
Mark S. Dym, Esq.
Elizabeth Mazur, Esq.
Margaret Truesdale, Esq.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100
mpiers@hsplegal.com
mdym@hsplegal.com
emazur@hsplegal.com
mtruesdale@hsplegal.com

ADAM DAVID INGBER, P.C.
Adam D. Ingber, Esq.
150 N. Michigan Avenue, Suite 2800
Chicago, Illinois 60601
312-853-3588
Ingberlaw@gmail.com